UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JIAN KE,

                                        Plaintiff,

                -against-

BIMI HOLDINGS INC., TIEWEI SONG, and
OUDOM FNU,

                                        Defendants.

---

24-CV-6324 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff Jian Ke brings this action against Defendants BIMI Holdings Inc, Tiewei Song, and Oudom Fnu. Beginning in 2020, Plaintiff worked with BIMI to help the company raise capital by selling its securities. ECF No. 17 ("First Amended Complaint" or "FAC") at 1–2. In return, he received warrants that entitled him to purchase common stock in the company. *Id.* Defendants then allegedly engineered a scheme to convince Plaintiff to keep those warrants until they were essentially worthless. *See id.* at 2–3. As a result, Plaintiff brings two breach of contract claims against BIMI and one fraud claim against BIMI, Mr. Song, and Mr. Fnu. ¶¶ 84–98.[1] Neither BIMI nor Mr. Song have appeared in this matter, so Plaintiff has initiated separate default judgment motions against them; the Court will rule on those separately. ECF Nos. 34, 43. Mr. Fnu moves to dismiss Plaintiff's Amended Complaint—in particular, the fraud claim asserted against him. ECF No. 22. Because Plaintiff has pled fraud with particularity as to Mr. Fnu and this claim is not duplicative of Plaintiff's breach of contract claims, the Court denies Defendant Fnu's motion in its entirety.

---

[1] Unless otherwise noted, all ¶ references refer to the FAC at ECF No. 17.

## BACKGROUND

The following facts are, unless otherwise noted, taken from the First Amended Complaint and presumed to be true for the purposes of this motion. *See LaFaro v. N.Y. Cardiothoracic Grp.*, *PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

Beginning in 2020, Plaintiff Jian Ke ("Plaintiff") worked with Defendant BIMI Holdings Inc. ("BIMI") to help the company raise capital by selling its securities. FAC at 1–2. In return, Plaintiff received warrants—"securities that, when exercised, entitle their holder to receive shares of an issuer's common stock or other securities"—to purchase shares in the company. *Id.* at 2 n.3. Plaintiff received these warrants in three batches. First, on or about June 2, 2020, he received warrants to purchase 3,181,302 shares of BIMI's common stock (the "June Warrants"). *Id.* at 2 n.4. Then, on or about February 26, 2021, he received warrants to purchase 398,633 shares of BIMI's common stock. *Id.* And, on or about November 22, 2021, he received warrants to purchase 452,903 shares of BIMI's common stock. *Id.* At the same time, the company issued common stock warrants to two institutional investors. *Id.* at 2.

By June 2023, Plaintiff was eager to execute his warrants and sell the resulting stock. ¶ 22. But, according to Plaintiff, BIMI's CEO, Mr. Song, convinced him otherwise. ¶¶ 24–28. Mr. Song told Plaintiff that if Plaintiff were to exercise his warrants, BIMI's stock price would plummet; instead, Mr. Song proposed a deal. ¶¶ 24, 26. Mr. Song told Plaintiff that the company would buy back his warrants at a discounted price. *Id.* at 2; ¶ 26. Plaintiff agreed: BIMI would purchase his 4,032,838 outstanding warrants at a price of $0.30 per warrant, for a total of $1,209,851. ¶ 36. BIMI and Plaintiff thus entered into a Warrant Purchase Agreement (the "WPA") on November 27, 2023. ¶¶ 33, 36. The WPA made clear that BIMI was to pay Plaintiff

"no later than two (2) months after November 27, 2023 (i.e., January 29, 2024)." ¶ 36; ECF No. 17-1 § 1.2.

BIMI did not pay Plaintiff by the original January 2024 deadline. ¶ 62. Plaintiff then agreed to extend the deadline to March 1, 2024, but BIMI again failed to pay. ¶¶ 53, 62. Approximately five days later, on or about March 6, 2024, Plaintiff partially exercised the June Warrants for 358,067 shares of the company's common stock. ¶ 73. BIMI delivered only 75,000 shares. ¶ 74. Meanwhile, BIMI bought back all of the institutional investors' warrants. ¶¶ 31, 54, 59.

Plaintiff alleges that he negotiated the WPA deal "personally with BIMI's CEO, Mr. Song . . . at the direction and behest of BIMI's Chairman and President, Mr. Fnu." ¶ 30. Mr. Song "represented that he was acting at Mr. Fnu's direction" and was "subject to [Mr. Fnu's] authority." ¶ 25. Mr. Song "consistently stated to Plaintiff that no corporate action would occur without Mr. Fnu's approval," because "Mr. Song kn[ew] that Mr. Fnu [was] a source of substantial liquidity for the [c]ompany and *de facto* the key decision-maker at BIMI." *Id.*; ¶ 48. According to Plaintiff, Mr. Song was "beholden to Mr. Fnu" because "upon information and belief, Mr. Fnu provide[d] financial support to Mr. Song." ¶ 49. In other words, Mr. Song acted as "an agent of Mr. Fnu . . . ." ¶ 50.

Mr. Fnu, for his part, had a personal financial interest in maintaining BIMI's stock price and "maximizing his personal control over the [c]ompany." ¶ 46. Had Plaintiff exercised his warrants—affording Plaintiff some 4 million shares of common stock—both the overall stock price and Mr. Fnu's ownership would have been diluted. ¶ 47.

Plaintiff also contends that BIMI, Mr. Song, and Mr. Fnu promised to extend his June Warrants as a part of their deal. ¶ 64. These warrants represented more than 75% of Plaintiff's

warrant holdings and were set to expire four years after they had been issued—on or about June 2, 2024. ¶¶ 64, 69. One month before that expiration date, "in conversations by telephone and in person at Mr. Fnu's offices . . . Mr. Fnu represented that the Company had authorized [a] six (6) month extension. And, upon information and belief, BIMI's Board of Directors did in fact approve such an extension." ¶ 64. But Defendants never signed a "draft agreement reflecting this intent and understanding" and now maintain that the June Warrants expired in June 2024—rendering them "effectively worthless." ¶¶ 65, 69.

To Plaintiff, Defendants' "true intention was to never pay Plaintiff, but to delay and distract in the hope that the Plaintiff would somehow go away." ¶ 66. BIMI, Mr. Song, and Mr. Fnu "never intended to pay the purchase price under the WPA or to extend the warrants." FAC at 3. Instead, "the artifice of the WPA was used to delay Plaintiff from exercising his warrants so that, *inter alia*, Defendants could free up enough [c]ompany resources to pay other, privileged (institutional investor) warrant holders." *Id.* "Now, BIMI is defunct and its common stock is all but worthless": in 2024, BIMI's stock price dropped from $3.56 per share in late February to $0.0011 per share at the end of the year. *Id.*; ¶ 70. In July, the company was delisted from the Nasdaq stock exchange. *Id.* And "the value of Plaintiff's warrants has declined with the value of BIMI's share price." ¶ 63.

As a result, Plaintiff brings this action alleging two breach of contract claims against BIMI—one for failing to purchase Plaintiff's warrants pursuant to the WPA, and another for failing to deliver Plaintiff's shares after he exercised some of his June Warrants—and one fraud claim against BIMI, Mr. Song, and Mr. Fnu. ¶¶ 84–98. Plaintiff alleges that Defendants committed fraud by making "numerous misrepresentations of material fact to Plaintiff to induce Plaintiff to enter into the WPA, to defer Plaintiff's exercise of the Warrants, and to delay making

full payment to Plaintiff, including that: (1) the Company could, would, and intended to tender the Purchase Price [to buy Plaintiff's warrants per the WPA]; and (2) that the Warrants would [be] extended." ¶ 94. Plaintiff alleges that "Defendants knew at the time each of these representations were made that they were untrue." *Id.*

Plaintiff originally filed this action on August 21, 2024. ECF No. 1. Mr. Fnu moved to dismiss, after which Plaintiff amended his complaint. ECF Nos. 14, 17. Mr. Fnu then filed a new motion to dismiss. ECF Nos. 22, 23 ("Fnu Mem."). He moves to dismiss the fraud claim against him pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

## LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id.* at 679.

**DISCUSSION**

Mr. Fnu argues that Plaintiff's Amended Complaint should be dismissed for two reasons: first, because Plaintiff failed to plead his fraud claim with the particularity required by Rule 9(b); and second, because Plaintiff's fraud claim "fails as a matter of New York law because it is duplicative of the breach of contract claims." Fnu Mem. at 1–2. Both arguments are unavailing.

## I.    Plaintiff Pleads His Fraud Claim with Particularity

To state a claim for fraud under New York law, a plaintiff must demonstrate: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (citing *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421 (1996)).

Additionally, Rule 9(b) sets forth a heightened pleading standard for fraud claims, requiring that they be "stated with particularity." FED. R. CIV. P. 9(b). In order to comply with Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner*, 459 F.3d at 290 (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). Plaintiffs must "allege facts that give rise to a strong inference of fraudulent intent." *Id.* (citing *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir.1995)). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or

recklessness." *Id.* at 290–91 (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

Mr. Fnu first contends that Plaintiff fails to plead his fraud claim with Rule 9(b)'s requisite particularity. He argues that the FAC largely relies on statements by Mr. Song, and not Mr. Fnu, without alleging any relationship or scheme between Mr. Fnu and Mr. Song that resulted in fraud against Plaintiff. He also contends that the FAC is devoid of details on what Mr. Fnu allegedly said to Plaintiff and when or how those communications took place. Fnu Mem. at 1, 5–6. Plaintiff argues the opposite. *See* ECF No. 28 ("Ke Mem.").

Plaintiff is correct. The Amended Complaint does identify an alleged material misrepresentation made by Mr. Fnu to Plaintiff—namely, that BIMI "could, would, and intended to" purchase Plaintiff's warrants pursuant to the WPA, and that BIMI agreed to extend Plaintiff's June Warrants. ¶ 94. The Amended Complaint also details when and how these communications took place: during conversations with Mr. Song in June 2023, primarily by telephone, ¶ 25; in various additional conversations with Mr. Song in or around January 2024, ¶ 53; and in Plaintiff's conversations with Mr. Fnu himself, which took place in May 2024 by telephone and in person at Mr. Fnu's offices, ¶ 64.

And the Amended Complaint does sufficiently allege a relationship or scheme between Mr. Fnu and Mr. Song that resulted in a fraud against Plaintiff. Plaintiff alleges that Mr. Song negotiated the WPA deal "at the direction and behest" of Mr. Fnu, ¶ 30; that Mr. Song "represented that he was acting at Mr. Fnu's direction" and was "subject to [Mr. Fnu's] authority," ¶ 25; that Mr. Song "consistently stated to Plaintiff that no corporate action would occur without Mr. Fnu's approval" because "Mr. Song knew that Mr. Fnu was a source of substantial liquidity for the company and *de facto* the key decision-maker at BIMI," ¶¶ 25, 48

(cleaned up); and even that Mr. Song was "beholden to Mr. Fnu" because "upon information and belief, Mr. Fnu provide[d] financial support to Mr. Song," ¶ 49. In short, Plaintiff argues that Mr. Song acted as "an agent of Mr. Fnu." ¶ 50.

At the motion to dismiss stage, the Court need not decide whether Mr. Song was in fact Mr. Fnu's agent; it is sufficient for Plaintiff to have alleged facts that make that relationship "plausible." *Twombly*, 550 U.S. at 570. Indeed, "the issue here is not whether plaintiffs have proved the existence of an agency relationship," but "merely whether they should have the chance to do so." *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 295 (S.D.N.Y. 2005). Plaintiff has pleaded sufficient facts to support a "plausible" agency relationship between Mr. Song and Mr. Fnu. Given Mr. Fnu's leadership role at BIMI and Mr. Song's alleged representations that he was acting at Mr. Fnu's behest, "the Court assuredly cannot now say that no trier of fact reasonably could infer that" Mr. Song was Mr. Fnu's agent. *Id.*

Accordingly, Plaintiff meets the elements required to plead a fraud claim with particularity. FED. R. CIV. P. 9(b). First, Plaintiff appropriately specifies the statements that he contends were fraudulent—that BIMI "could, would, and intended to" purchase Plaintiff's warrants pursuant to the WPA, and that Defendants agreed to extend Plaintiff's June Warrants. ¶ 94. Second, Plaintiff identifies Mr. Fnu as the relevant speaker. Whether or not Mr. Song was acting as Mr. Fnu's agent, Plaintiff has alleged sufficient facts to meet this requirement. On the one hand, a reasonable inference from the facts alleged is that Mr. Fnu was able to "exercise control over" Mr. Song—and was thus speaking through him. *N. Shipping Funds I, LLC v. Icon Cap. Corp.*, 921 F. Supp. 94, 103 (S.D.N.Y. 2013); *see also In re Parmalat Sec. Litig.*, 375 F.Supp.2d at 290 ("The element of control often is deemed the essential characteristic of the

principal-agent relationship."). On the other hand, the Amended Complaint also claims that Mr. Fnu told Plaintiff directly that BIMI "had authorized" extending the June Warrants. ¶ 64.

Third, as above, Plaintiff states where and when the relevant statements were made. ¶¶ 25, 53, 64. And he explains why the statements were fraudulent, alleging that "the WPA negotiation and execution was merely a thinly veiled tactic to delay ever making any payment to Plaintiff while the Defendants attended to other liabilities." ¶ 43. Construing these allegations in Plaintiff's favor, they also demonstrate that Mr. Fnu "had both motive and opportunity to commit fraud . . . ." *Lerner*, 459 F.3d at 290 (internal citation omitted).

Plaintiff has thus pleaded his fraud claim against Mr. Fnu with the particularity demanded by Rule 9(b). Mr. Fnu's motion to dismiss Plaintiff's Amended Complaint on that basis is therefore denied.

## II.    Plaintiff's Fraud Claim Is Not Duplicative

Mr. Fnu next asserts that Plaintiff's fraud claim should be dismissed because it is duplicative of his breach of contract claims. Fnu Mem. at 7–8.

"The Second Circuit has held that, as a general rule, the allegation that a party entered into a contract intending to breach that contract is insufficient to support a claim for fraud." *Uni-World Cap., L.P. v. Preferred Fragrance, Inc.*, 43 F. Supp. 3d 236, 243 (S.D.N.Y. 2014) (internal citation omitted); *see also Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) ("[G]eneral allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support a fraud claim." (cleaned up)); *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,* 98 F.3d 13, 19–20 (2d Cir. 1996) (dismissing a fraud claim where the alleged misrepresentations "amount[ed] to little more than intentionally-false statements . . . indicating [defendant's] intent to perform under the contract").

9

"However, not every fraud claim is foreclosed in an action also involving a contract." *Wall v. CSX Transp., Inc.*, 471 F.3d at 416. That is because this general "rule derives from a very long and very puzzling line of New York cases" where, on "at least four occasions, New York's Court of Appeals has expressly held that a contractual promise made with the undisclosed intention not to perform it constitutes fraud." *Uni-World Cap.*, 43 F. Supp. 3d at 243 n.5 (internal quotation marks and citation omitted). By contrast, "there are numerous Appellate Division cases that state precisely the opposite rule." *Id.* (internal citation omitted). Therefore, the "Second Circuit and courts in this district have resolved the conflict between the state cases by following the Appellate Division's rule and crafting fact-specific exceptions that account for the Court of Appeals' decisions." *Marriott*, 2003 WL 21314056, at *6 n.3 (collecting cases).

Namely, a plaintiff can plead a fraud claim alongside a breach of contract claim if he "(i) demonstrate[s] a legal duty separate from the duty to perform under the contract; or (ii) demonstrate[s] a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek[s] special damages that are caused by the misrepresentation and unrecoverable as contract damages." *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 352 (S.D.N.Y. 2020) (quoting *Bridgestone/Firestone*, 98 F.3d at 20). Furthermore, "a fraud claim may be dismissed as duplicative only as against a defendant against whom the related contract claim is viable." *Secure Source Claims Co., LLC v. Miller*, No. 22-CV-9764 (JGLC) (OTW), 2024 WL 1342804, at *8 (S.D.N.Y. Mar. 29, 2024) (quoting *Sun Prod. Corp. v. Bruch*, 507 F. App'x 46, 47–48 (2d Cir. 2013)).

Plaintiff's allegations fall squarely into these exemptions to the general rule. First, Plaintiff is not asserting a breach of contract claim against Mr. Fnu—so his fraud claim cannot be duplicative. As in *Secure Source Claims Co.*, Mr. Fnu was "not party to the contract" in

question—the contract was made only between Plaintiff and BIMI. 2024 WL 1342804, at *8; ECF No. 17-1 at 2. And there is no risk that Plaintiff is now attempting to "recharacterize[e] [his] contract claims as torts." *Wall v. CSX Transp., Inc.*, 471 F.3d at 416. Instead, as explained below, his fraud claim against Mr. Fnu is separately based on false promises made that were designed to prevent Plaintiff from exercising the Warrants—not simply a claim that the WPA was breached. Accordingly, his fraud claim cannot "be dismissed as duplicative" because "the related contract claim" is not "viable" against Mr. Fnu. *Source Claims Co.*, 2024 WL 1342804, at *8.

Second, even if Mr. Fnu were subject to a breach of contract claim, Plaintiff is asserting fraud allegations that are "collateral or extraneous to the contract." *State St. Glob. Advisors Tr. Co.*, 431 F. Supp. 3d at 352 (internal citation omitted). Plaintiff is not simply alleging that Mr. Fnu (and Mr. Song and BIMI) entered into the WPA intending to breach the agreement, but that Mr. Fnu (and Mr. Song and BIMI) used the WPA, as well as promises to extend the June Warrants, in order to forestall Plaintiff from ever executing his warrants. Mr. Fnu's alleged promise to extend the June Warrants, in particular, constitutes "a promise to take some future action which is collateral to the contract . . . ." *Wall v. CSX Transp., Inc.*, 471 F.3d at 416 (citing *Deerfield Comms. Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956 (1986)). These allegations therefore extend beyond a mere "repackaged assertion that [Mr. Fnu] fraudulently induced [Plaintiff] to contract without intending to perform." *Secure Source Claims Co.*, 2024 WL 1342804, at *8. They are "collateral or extraneous to the contract" and are thus not bound by the general rule. *State St. Glob. Advisors Tr. Co.*, 431 F. Supp. 3d at 352 (internal citation omitted).

Therefore, Plaintiff's fraud claim against Mr. Fnu is not duplicative of his breach of contract claims against BIMI—and Mr. Fnu's motion to dismiss Plaintiff's Amended Complaint on this basis is denied as well.

## CONCLUSION

For the foregoing reasons, Mr. Fnu's motion to dismiss Plaintiff's Amended Complaint is DENIED. His initial motion to dismiss Plaintiff's Complaint is DENIED as moot. The Clerk of Court is respectfully directed to terminate ECF Nos. 14 and 22.

Dated:  September 29, 2025
        New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge